# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ORCHARD SECURITIES LLC, a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL PAVEL, an individual, and MARGARET PAVEL, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br>1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE AFFIDAVIT OF ATTORNEY ALAN WOLPER (DKT. NO. 25);<br>2) DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS (DKT. NO. 19); AND<br>3) GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 3)<br><br>Case No. 2:13-cv-00389-RJS<br><br>Honorable Judge Robert J. Shelby |

This matter comes before the court on Plaintiff Orchard Securities, LLC's Motion for Preliminary Injunction (Dkt. No. 3) and Defendants Michael and Margaret Pavel's Motion to Compel Arbitration and to Stay Proceedings (Dkt. No. 19). The court heard oral argument on July 12, 2013, and issued a bench ruling that day, granting Orchard Securities' Motion for Preliminary Injunction and denying the Pavels' Motion to Compel Arbitration.[1] This Memorandum Decision and Order memorializes the court's oral ruling.

---

[1] At the hearing on July 12, 2013, the court also heard argument on the Pavels' Motion to Strike the Affidavit of Attorney Alan M. Wolper (Dkt. No. 25), which was granted in part and denied in part.

# I. FACTUAL BACKGROUND

Orchard Securities filed this action as a complaint for injunctive and declaratory relief, seeking to enjoin the Pavels from proceeding against Orchard Securities in an arbitration action that the Pavels filed before the Financial Industry Regulatory Authority ("FINRA").[2] (Dkt. No. 1). The arbitration proceeding is styled as *Michael Pavel and Margaret Pavel v. Anthony W. Thompson, Joshua Daniel Slaybaugh, Direct Capital Securities, Inc., Clay Harris Womack, Raymond P. Stovall, and Orchard Securities, LLC* and further identified by FINRA Case No. 13-00106 (the "FINRA Arbitration"). The Pavels there assert claims arising from their purchase of various tenant-in-common ("TIC") interests, including an offering related to real estate at 1355 First Avenue in New York, New York ("1355 First Avenue TIC") for which Orchard Securities served as managing broker-dealer.

In its motion for preliminary injunction, Orchard Securities argues it cannot be compelled to arbitrate the claims asserted by the Pavels, citing the lack of any written arbitration agreement or facts sufficient to demonstrate that the Pavels are "customers" of Orchard Securities and thus entitled to compel arbitration under applicable FINRA rules. While Orchard Securities served as managing broker-dealer for the 1355 First Avenue TIC, it did not (i) own the underlying property; (ii) locate the property; (iii) sponsor the offering; or (iv) prepare the private placement memorandum ("PPM") distributed to potential investors. Rather, these undertakings were the

---

[2] FINRA, formerly known as the National Association of Securities Dealers, Inc. ("NASD"), is a not-for-profit corporation registered with the Securities and Exchange Commission and is the largest independent regulator for all securities firms doing business in the United States. *See* "About FINRA," http://www.finra.org/AboutFINRA. FINRA was established under Section 15A of the Securities Exchange Act of 1934, 15 U.S.C. § 780–3, and is vested with the "authority to exercise comprehensive oversight over all securities firms that do business with the public." *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosp., Inc.* 660 F.3d 643, 648 (2d Cir. 2011) (*quoting Sacks v. SEC,* 648 F.3d 945, 948 (9th Cir. 2011)).

responsibility of the sponsoring entity, Bluerock Real Estate, LLC.  The PPM explained that any questions or further requests for information regarding the terms and conditions of the offering were to be directed to Bluerock.

As managing broker-dealer, Orchard Securities was permitted to enlist third party broker-dealers, including Direct Capital Securities, Inc., to offer the TIC interests to their respective customers.  Direct Capital offered the 1355 First Avenue TIC to its customers, including the Pavels, who acknowledged in writing that Direct Capital registered representative Joshua Slaybaugh made the recommendation that they purchase the 1355 First Avenue TIC.  In a purchaser certification required in connection with their purchase of the 1355 First Avenue TIC, the Pavels identified Direct Capital as their broker-dealer.  They did not maintain any account or enter into any contracts with Orchard Securities, nor did they directly purchase any investments, products, or services from Orchard Securities.

The question before the court is whether the Pavels can compel Orchard Securities to participate in the FINRA Arbitration.  Orchard Securities filed this action 1) seeking a declaration that the Pavels were not its customers pursuant to FINRA Rule 12200; and 2) seeking to enjoin the Pavels from pursuing their claims against Orchard Securities in the FINRA Arbitration.  The Pavels argue that they are customers of Orchard Securities, and cross-move to stay these proceedings and to compel arbitration.

## II. STANDARD OF REVIEW

Under Rule 65 of the Federal Rules of Civil Procedure, a preliminary injunction is intended to preserve the relative positions of the parties until a trial on the merits.  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  The court may issue a preliminary injunction only

where a moving party establishes: 1) a substantial likelihood of success on the merits; 2) irreparable harm if the injunction is denied; 3) the threatened injury to the movant outweighs the harm that the preliminary injunction may cause the opposing party; and 4) the injunction will not adversely affect the public interest. *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

### III. DISCUSSION

**A.     Orchard Securities' Motion For Preliminary Injunction**

    **i.     Likelihood of Success on the Merits**

The parties agree that this dispute largely turns on whether Orchard Securities will succeed on the merits of its argument justifying an injunction. While federal policy favors arbitration, it is axiomatic that a party cannot be required to submit to arbitration in any dispute in which it has not agreed to submit. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). In the context of FINRA arbitration, a FINRA member, such as Orchard Securities, can be compelled to arbitrate only in certain limited circumstances identified in FINRA Rule 12200, which provides:

> Parties must arbitrate a dispute under the Code if:
> - Arbitration under the Code is either:
>   (1)     Required by a written agreement, or
>   (2)     Requested by the customer;
> - The dispute is between a customer and a member or associated person of a member; and
> - The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the

insurance business activities of a member that is also an insurance company.

The parties agree that this provision governs. As there exists no written agreement between the parties, the court must determine whether the Pavels were "customers" of Orchard Securities for purposes of Rule 12200. Rule 12100(i) of FINRA's Customer Code of Arbitration Procedures ("Code") defines "customer" only in the negative, stating "[t]he term 'customer' shall not include a broker or dealer." The Pavels maintain that this definition of "customer" is to be construed broadly, and thus they should be considered customers of Orchard Securities because they are not brokers or dealers.

The Pavels' interpretation is at odds not only with recent decisions that have addressed the term "customer" for purposes of Rule 12200, but also with FINRA's definition of "customer" in other contexts.[3] Additionally, the court is cognizant of the ramifications of such an interpretation on the industry as a whole; as one district court cautioned, "the term 'customer' should not be construed too narrowly, nor should it be interpreted in a manner that would ignore the reasonable expectations of FINRA members." *Zarecor v. Morgan Keegan & Co., Inc.*, 2011 WL 5592861, at *5 (E.D. Ark. July 29, 2011).

A number of courts have recently considered and rejected the Pavels' proffered expansive interpretation of Rule 12200. One federal court recently observed that a broad interpretation allowing a customer relationship simply upon the showing that the party is not a broker or dealer would yield "absurd" results. *UBS Securities, LLC v. Voegeli*, 684 F.Supp. 2d 351, 356 (S.D.N.Y. 2010). Other courts have recognized that the definition of "customer" must not be so

---

[3] The court has identified several other definitions of customers in FINRA Rules, including in Rule 2261(C), Rule 4210(A)(3), and Rule 4530. The court must look to the specific context in which the term is used to discern its meaning.

broad that it would upset the reasonable expectations of the FINRA members, as parties to the "contract" created by the FINRA rules. *Morgan Keegan & Co., Inc. v. Jindra*, 2011 WL 5869586, at *3 (W.D. Wash. Nov. 22, 2011).

The case of *Berthel Fisher & Co. Financial Services, Inc. v. Larmon*, 2011 WL 3294682 (D. Minn. Aug. 1, 2011), featured facts similar to those in the instant case, and is particularly instructive. There, investors who had purchased TIC offerings through an independent broker-dealer filed a FINRA arbitration against Berthel Fisher & Co. Financial Services, Inc., which served as the managing broker-dealer of the offering. *Id.* at *1. Like Orchard Securities here, Berthel Fisher was listed as the managing broker-dealer in the private placement memorandum distributed to investors, but it did not participate in the drafting of the PPM, nor did it hold any accounts on behalf of or have any interaction, contract, or any other agreement with the investors. *Id.* The court noted the lack of interaction between the investors and Berthel Fisher, observing that although "the investors can arbitrate their claims against the [independent broker-dealers] with whom they dealt directly…they cannot fold into the arbitrations claims against other entities with whom they have no direct relationship." *Id.* To do so would expand the definition of "customer" to include individuals with no direct business or investment relationship with a firm and would frustrate the reasonable expectations of FINRA members. *Id.* (citing *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 772 (8th Cir. 2001)). The Eighth Circuit affirmed, concluding that "because Berthel did not provide 'investment or brokerage related services' to the investors, the investors are not Berthel's customers under FINRA Rule 12200." *Berthel Fisher & Co. Financial Services, Inc. v. Larmon*, 695 F.3d 749, 753 (8th Cir. 2012).

The *Berthel Fisher* decision is consistent with recent decisions from other courts which have declined to endorse an overly broad interpretation of "customer" under FINRA Rule 12200. *See Raymond James Financial Services, Inc. v. Cary*, 709 F.3d 382, 386-87 (4th Cir. 2013); *Morgan Keegan & Co., Inc. v. Agresti*, 2012 WL 4505897, at *3-4 (D. N.J. Sept. 28, 2012); *Morgan Keegan & Co. v. Louise Silverman Trust,* 2012 WL 113400, at *6 (D. Md. Jan. 12, 2012); *Morgan Keegan & Co., Inc. v. Shadburn*, 829 F. Supp. 2d 1141, 1147-52 (M.D. Ala. 2011); *Morgan Keegan & Co. v. McPoland*, 829 F. Supp. 2d 1031, 1035 (W.D. Wash. 2011); *Morgan Keegan & Co. v. Garrett*, 816 F. Supp. 2d 439, 441 (S.D. Tex. 2011); *Morgan Keegan & Co. v. Jindra*, 2011 WL 5869586, at *5 (W.D. Wash. Nov. 22, 2011); *Proshares Trust v. Schnall*, 695 F. Supp. 2d 76, 80 (S.D.N.Y. 2010); *Herbert J. Sims & Co., Inc. v. Roven*, 548 F. Supp. 2d 759, 764-66 (N.D. Cal. 2008); *Goldman Sachs & Co. v. Becker*, 2007 WL 1982790, at *8 (N.D. Cal. July 2, 2007). In each of these cases, the courts concluded that the defendants were not "customers" of the firms within the meaning of Rule 12200 and granted the FINRA member firms injunctive protection from a pending FINRA arbitration.

The facts of these cases are similar to the undisputed facts present here. The Pavels admit they never signed a written contract or customer agreement with Orchard Securities, and did not and do not maintain any brokerage or investment account with the company. The Pavels did not purchase the 1355 First Avenue TIC, or any other products or services, through Orchard Securities; rather, they made their purchase through Direct Capital at the recommendation of Direct Capital registered representative Joshua Slaybaugh. In paperwork completed in connection with the purchase of the 1355 First Avenue TIC, the Pavels affirmatively acknowledged that Direct Capital was their broker-dealer. And, while Orchard Securities did

7

serve as managing broker-dealer, it did not participate in drafting the PPM, had no direct, substantive interaction with the Pavels, and did not have any contract or other agreement with them. In short, the Pavels were customers not of Orchard Securities, but of Direct Capital, which provided them investment and/or brokerage-related services.

While the court views this as conclusive evidence that the Pavels were not Orchard Securities' customers for purposes of Rule 12200, the court will briefly address the facts that the Pavels advance in support of their argument that a customer relationship was formed. First, the Pavels point to Orchard Securities' name and logo that appeared on the front and back covers of the marketing brochure for the 1355 First Avenue TIC, along with the name and logo of Bluerock. However, the body of the brochure refers to various actions undertaken by Bluerock – not Orchard Securities. The Pavels also note that Orchard Securities was entitled to compensation relating to the offering of the 1355 First Avenue TIC. While Orchard Securities did receive a placement fee based on total sales, Orchard Securities did not sell any TIC interests to its own customers and all selling commissions were paid to the third-party soliciting broker-dealers, including Direct Capital. Finally, the Pavels allege they were instructed by Direct Capital to mail their PPM and other purchasing documents directly to Orchard Securities. However, it is undisputed that the Direct Capital registered representative and registered principal were required to review these documents and sign off on a broker-dealer certification. That Orchard Securities served as a clearinghouse for some of the documentation processed as part of the offering does nothing to change the fact that Orchard Securities provided the Pavels with no investment or brokerage services.

These connections that the Pavels identify, in light of the reasoning set forth in the cases

cited above, are too remote and insignificant to establish a direct customer relationship with Orchard Securities under FINRA Rule 12200. For all of these reasons, the court finds that Orchard Securities has made a clear showing that it is likely to succeed on the merits of its claims that, in the absence of an injunction, it would be forced to participate in a FINRA arbitration in which it has not agreed to participate.

### ii. Irreparable Harm

As a general proposition, and as cited by this court in *Monavie, LLC v. Quixtar Inc.*, 741 F.Supp.2d 1227, 1238 (D. Utah 2009) (J. Jenkins), the prospect of injury to a party who is forced to submit to arbitration when it did not agree to do so can constitute irreparable injury sufficient to warrant injunctive relief. Absent issuance of a preliminary injunction, Orchard Securities will be required to participate in discovery and resolution of a case in a forum lacking the substantive and procedural safeguards provided in our courts. The court finds that this is a sufficient showing to establish irreparable injury for its preliminary injunction analysis on the facts presented.

### iii. Balancing of Equities

In analyzing whether the balance of hardship favors the moving party, the court must determine whether the identified irreparable harm to the movant outweighs the harm to the opposing party if the preliminary injunction is granted. *Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002). Here, if the court were to grant Orchard Securities' motion for preliminary injunction, the Pavels would still be permitted to pursue their FINRA Arbitration against the other parties there named, and would still have the opportunity to pursue such claims as may exist against Orchard Securities in court. On the other hand, and in light of Orchard Securities'

9

likelihood of success on the merits, the harm that would befall Orchard Securities would be irreparable, as Orchard Securities would be compelled to arbitrate a dispute that it did not agree to arbitrate and would thus lose the right to have the Pavels' claims adjudicated in court. The court finds that a balancing of the equities weighs heavily in favor of entering a preliminary injunction.

### iv. Public Interest

There is a strong public interest favoring arbitration. However, it is equally important that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotations omitted). Forcing parties to arbitrate when they did not agree to arbitrate would generate powerful disincentives to participate in arbitration and would lower the public's confidence in arbitration as an avenue for dispute resolution. *Morgan Keegan & Co., Inc. v. Louise Silverman Trust*, 2012 WL 113400, at *6 (D. Md. Jan. 12, 2012), *aff'd sub nom. Morgan Keegan & Co., Inc. v. Silverman*, 706 F.3d 562 (4th Cir. 2013); *see also Berthel Fisher*, 2011 WL 3294682, at *8 ("Public confidence in arbitration would be undermined if a party could be compelled to arbitrate without its consent."). Here, a preliminary injunction will serve the public interest by minimizing the risk that Orchard Securities will suffer the inconvenience and cost associated with arbitrating a dispute it did not agree to arbitrate, while also preserving the Pavels' right to adjudicate their claims against Orchard Securities in court, should they choose to do so.

B.  **Requirement of Bond Under Fed.R.Civ.P. 65(C)**

While the court has some difficulty identifying any specific financial damages flowing to the Pavels if Orchard Securities' motion for preliminary injunction is wrongfully granted, the court believes that a bond should issue to satisfy both the spirit and the language of Rule 65 of the Federal Rules of Civil Procedure. Orchard Securities is required to post a bond of $5,000 with the Clerk of Court prior to entry of this Order.

IV. CONCLUSION

Based on the foregoing, the court finds that Orchard Securities has satisfied each of the factors required for issuance of a preliminary injunction, and the court finds as a matter of law that the Pavels were not "customers" of Orchard Securities under FINRA Rule 12200. Accordingly, it is hereby **ORDERED**:

(1) The Pavels' Motion to Strike the Affidavit of Attorney Alan M. Wolper (Dkt. No. 25) is **GRANTED IN PART** and **DENIED IN PART.** The Affidavit (Dkt. No. 23-4), which is attached to Orchard Securities' Reply Memorandum in Support of Motion for Preliminary Injunction, is received by the court, but paragraphs 15 through 17 are stricken;

(2) The Pavels' Motion to Compel Arbitration and to Stay Proceedings (Dkt. 19) is **DENIED**;

(3) Orchard Securities' motion for preliminary injunction (Dkt. 3) is **GRANTED**, and Michael Pavel and Margaret Pavel are restrained and enjoined from pursuing claims against Orchard Securities in the FINRA Arbitration, styled *Michael Pavel and Margaret Pavel v. Anthony W. Thompson, Joshua Daniel Slaybaugh, Direct Capital Securities,*

*Inc., Clay Harris Womack, Raymond P. Stovall, and Orchard Securities, LLC*, FINRA Case 13-00106, pending a trial on this action; and

(4) Orchard Securities shall post a bond of $5,000 with the Clerk of Court.

**SO ORDERED**.

Dated this 6th day of August, 2013.

BY THE COURT:

_____
**ROBERT J. SHELBY**
**UNITED STATES DISTRICT JUDGE**